**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

-------------------------------------------------------------------x

JANE DOE,                                                        Civil Action No.

       Plaintiff                                          **COMPLAINT**

   **v.**                                                      ***PLAINTIFF DEMANDS***
                                                                ***A TRIAL BY JURY***
MCDONALD'S USA, LLC, and
TANWAY ENTERPRISES, L.P.,

    Defendants.

-------------------------------------------------------------------x

     Plaintiff, Jane Doe, by and through her counsel, Derek Smith Law Group, PLLC, as for her

Complaint against the Defendants, McDonald's USA, LLC, and TANWAY ENTERPRISES L.P.,

respectfully alleges upon information and belief as follows:

## NATURE OF CASE

1. This is an action for damages and other relief pursuant to Title VII of the Civil Rights Act of
   1964, 42 U.S.C. 2000e *et seq.*, as amended ("Title VII"), the Pennsylvania Human Relations
   Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"), and the Philadelphia Fair Practices
   Ordinance, § 9-1100 *et. seq.* ("PFPO"), in addition to numerous violations of the laws of
   Pennsylvania State, and Pennsylvania Common law and seeks damages to redress the injuries
   Plaintiff has suffered as a result of being sexually harassed, discriminated against on the basis
   of gender, and retaliated against by Defendant for complaining of harassment and
   discrimination.

## JURISDICTION AND VENUE

2. This is an action for monetary damages and all other appropriate relief as deemed appropriate
   by the court, pursuant to Title VII of the Civil Rights Act of 1964 and Pennsylvania
   Common Law.

3. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Philadelphia County. Additionally, the events took place in Philadelphia County.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. On August 13, 2018, Plaintiff timely filed charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations Commission ("PHRC"), and the Philadelphia Commission on Human relations alleging violations of Title VII, the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA"), and the Philadelphia Fair Practices Ordinance, § 9-1100 *et. seq.* ("PFPO").

6. Plaintiff by and through her attorney requested, that her Charge be simultaneously filed with the EEOC, PHRC and any other State or local agency with whom these Agencies had a work sharing agreement.

7. On or around September 18, 2019, the EEOC issued Plaintiff a Notice of Right to Sue within 90 Days.

8. On or around October 23, 2019, the PCHR issued Plaintiff a Dismissal and Notice of Rights.

9. This action is being commenced within ninety (90) days of Plaintiff receiving the Notice of Right to Sue.

10. This action is being commenced more than one year after Plaintiff's initial agency filing date.

11. Plaintiff have complied with all administrative prerequisites to bring this lawsuit.

## **PARTIES**

12. At all material times, Plaintiff JANE DOE (hereinafter referred to as "Plaintiff" or "DOE") is an individual female who is a resident of the County of Philadelphia in the Commonwealth of Pennsylvania.

13. At all times material, Plaintiff DOE was a sixteen year-old minor female.

14. At all material times, Defendant McDonald's USA, LLC is a foreign limited liability corporation duly existing under the laws of the State of Delaware.

15. At all material times, Defendant TANWAY ENTERPRISES, LP is a domestic limited partnership existing under the laws of the State of Pennsylvania.

16. At all times material times, Defendant McDonald's USA LLC and Defendant TANWAY ENTERPRISES, LP (collectively hereinafter referred to as Defendants or "McDonald's") were Plaintiff's joint and/or sole employer.

17. Defendants McDonald's operates a fast food restaurant at 5020 City Ave, Philadelphia, PA (hereinafter referred to as the "City Line Location.")

18. At all times material, Defendant McDonald's USA, LLC instructed Defendant TANWAY ENTERPRISES, LP on the methods, procedures, and techniques of operating a restaurant, including providing specific instructions as to business procedures, personnel evaluation methods, hours of store operations, and provided means for regular inspections in accordance with corporate standards.

19. At all times material, Defendants McDonald's employed DARNELL PENN (hereinafter referred to as "Mr. Penn") as a "Store Manager."

20. At all times material, Mr. Penn held supervisory authority over Plaintiff.

## STATEMENT OF FACTS

21. In or around April 2018, Defendants McDonald's, by and through their then Store Manager, Stephanie Nicholson, scheduled Ms. Doe to interview for an open "Crew Member" position.

22. On or around April 12, 2018, Ms. Doe entered the City Line Location and approached the register wherein Ms. Penn was positioned. Ms. Doe informed Mr. Penn that she was there to interview with Ms. Nicholson for the open "Crew Member" position.

23. Mr. Penn confirmed Ms. Doe's interview with his colleague Ms. Nicholson and instructed Ms. Doe to take a seat.

24. While seated, Ms. Doe observed Mr. Penn appear to make a call using a cell phone, presumably to contact Ms. Nicholson.

25. Shortly thereafter, Mr. Penn approached Ms. Doe and informed her that Ms. Nicholson had forgotten their previously scheduled interview and instructed him to move forward with the interview in her absence.

26. Mr. Penn further informed Ms. Doe that he would be meeting with another candidate and would return to her shortly. Mr. Penn provided Ms. Doe an Application Form to complete while she waited.

27. After waiting for approximately forty-five (45) minutes, Mr. Penn approached Ms. Doe invited Ms. Doe to join him at a booth for her interview.

28. Mr. Penn began the "interview" Ms. Doe, reviewing with Ms. Doe her background information and prior experience.

29. At all times material, Mr. Penn was fully aware that Ms. Doe was a sixteen (16) year old minor.

30. During the course of the interview, Ms. Doe's mother called to inquire about her status. At or around the same time, Mr. Penn was approached by a co-worker regarding another matter in the store. Mr. Penn permitted Ms. Doe the opportunity to answer the call, wherein Ms. Doe quickly informed her mother that the interview was ongoing and, therefore she could not speak. However, before Ms. Doe had the opportunity to hang-up, Mr. Penn grabbed her phone and began to speak with Ms. Doe's mother.

31. Mr. Penn asked Ms. Doe's mother to describe Ms. Doe's strengths, weakness and personality. Caught of guard by the unusual request, Ms. Doe's mother respectfully responded explaining that her daughter is highly intelligent but also vert timid.

32. After hearing from her mother, Mr. Penn explained to both women that Ms. Doe is a strong candidate and would be a great fit for the position and would be moving forward with hiring her.

33. After the conversation, and offering Ms. Doe the position, Mr. Penn continued to speak with Ms. Doe.

34. Mr. Penn requested that Ms. Doe unlock her phone so that he could "continue to investigate" who she was as a person. Unsure about his request but naïve to the interview process, Ms. Doe reluctantly complied.

35. Observing that Ms. Doe was uncomfortable by the request, Mr. Penn insisted that he had an unorthodox interview style, stating word to the effect of "EVERY PERSON I INTERVIEW I GO THROUGH THEIR PHONE TO SEE IF THEY'RE REALLY THE PERSON THEY

SAY THEY ARE. YOU KNOW YOUR PHONE ALWAYS TELLS YOU EVERYTHING

ABOUT A PERSON."

36. Mr. Penn continued to explain his actions as he scrolled through Ms. Doe's phone, stating

words to the effect of, "I LIKE TO LEARN A PERSON'S PERSONALITY FIRST

BEFORE HIRING THEM BECAUSE WHAT IF YOU TELL ME ONE THING ABOUT

YOURSELF AND WHILE YOU WORK YOU CHANGE. I ALSO DO THIS TO SEE

WHERE I CAN FIT YOU IN AT, WHETHER YOU'LL GET ALONG WITH THE

PEOPLE YOU WORK WITH."

37. At all times material, Mr. Penn continued to scrutinize the contents of the Ms. Doe's phone

while asking Ms. Doe increasingly personal questions such as, "**HOW DO YOU FEEL**

**ABOUT YOURSELF? I SEE YOU TAKE A LOT OF SELFIES. BUT I DON'T SEE**

**ANY TYPE OF FULL BODY PICTURES**."

38. Ms. Doe again reluctantly responded stating, "I GUESS I THINK HIGHLY OF MYSELF.

YES, I LIKE SELFIES, BUT I DON'T HAVE A FULL MIRROR TO TAKE WHOLE

BODY PICTURES NOR DO I GO OUT FOR SOMEONE TO TAKE A PICTURE OF

ME."

39. Mr. Penn responded, stating, "I UNDERSTAND, BECAUSE USUALLY THAT MAY

MEAN SOMEONE IS INSECURE WHEN YOU SEE SOMETHING MORE THAN

ANOTHER."

40. Mr. Penn continued to pry into Ms. Doe's personal life, asking "IS YOUR DUDE IN

HERE?"

41. When Ms. Doe gave an affirmative response, Mr. Penn excitedly responded, "HOW LONG

HAVE YA'LL BEEN TOGETHER AND HOW OLD IS HE?" and "HE LOOKS OLDER."

42. Mr. Penn briefly returned to the topic of Ms. Doe's role with Defendants, stating, "WELL FROM WHAT I SAW, YOU SEEM TO HAVE A LOT OF POTENTIAL; YOUR CARING TOWARDS THE PEOPLE YOU LOVE, YOU'RE CONCEITED, OUTGOING AND SEEM LIKE YOU CAN BRING A LOT TO THIS COMPANY."

43. Mr. Penn proceeded to tell Ms. Doe that she was hired and gave her specific instructions on how to obtain the necessary working papers and new hire documentation.

44. Immediately thereafter, Mr. Penn continued to speak with Ms. Doe about her text messages, asking "YOU TOLD YOUR DUDE THAT YOU WERE GOING TO CRUSH THIS; HOW DID YOU KNOW AND WHAT MADE YOU SAY THIS?"

45. At all times material, Ms. Doe responded that she has "A LOT OF SELF-CONFIDENCE AND WAS TRYING TO STAY POSITIVE."

46. Mr. Penn asked Ms. Doe about her starting availability for that week, wherein Ms. Doe explained that she is available after she finishes her school day as well as on weekends.

47. After acknowledging her availability, Mr. Penn proceeded to offer his phone to Ms. Doe to review its' contents, insisting, "IT IS ONLY FAIR."

48. Ms. Doe attempted to refuse but was met with a stern and adamant insistence by Mr. Penn that she review his pictures as he had done to her.

49. Worried that Mr. Doe would rescind the job offer her had made momently earlier, Ms. Doe reluctantly agreed and began to "swipe" through his images to placate his request.

50. Seemingly excited by her actions, Mr. Penn asked, "WHAT DO YOU SEE?" to which Ms. Doe responded "A PICTURE OF YOU AND YOUR DAUGHTER ON A MOTORCYCLE."

51. Ms. Doe kept scrolling in hopes that Mr. Penn would stop her but he only became more excited. Suddenly, Ms. Doe became visibly alarmed at the sight of sexually graphic pictures, including pictures of nude women and pictures of what Ms. Doe presumed to be Mr. Penn's exposed genitals.

52. Mr. Penn, undeterred by Ms. Doe's discomfort and noticeable disgust, asked Ms. Doe "**DO YOU HAVE ANY PICTURES LIKE THIS?**"

53. At all times material, Ms. Doe responded "**NO I DON'T TAKE PICTURES LIKE THIS AND I FEEL UNCOMFORTABLE**."

54. Mr. Penn continued to inquire about Ms. Doe's personal life.

55. Mr. Penn asked Ms. Doe again about her boyfriend, asking countless invasive and unwelcome sexual questions such as, "**ARE YOU HAVING SEX WITH HIM?**" and "**DO YOU GIVE HIM ORAL SEX?**"

56. Ms. Doe continued to insist she was uncomfortable and responded "**NO**" to Mr. Penn's barrage of inappropriate sexual questions.

57. At all times material, Mr. Penn informed Ms. Doe that he was simply trying to "BREAK HER OUT OF HER SHYNESS."

58. Mr. Penn then insisted that Ms. Doe position herself so that he could see her breasts beyond what could be viewed in her school uniform.

59. Ms. Doe began to cry and again responded "NO."

60. Mr. Penn concluded the "interview" by demanding that Ms. Doe provide him with her cell phone number.

61. Ms. Doe felt uncomfortable with giving Mr. Penn her phone number based on the above harassment and instead requested he give his number to her.

62. Mr. Penn agreed and proceeded to encourage Ms. Doe to "**CALL ME WHEN YOUR MOTHER IS NOT AROUND**."

63. Mr. Penn informed Ms. Doe that she needed to bring her identification card and social security number with her to her first shift and offered to accompany Ms. Doe to obtain said documents if she didn't have them in her possession already. Also, Mr. Penn informed Ms. Doe that she would start on the following Sunday during the new pay period.

64. At all times material, Ms. Doe agreed to the start date and quickly left the interview.

65. Ms. Doe immediately hurried home in a distraught manner, crying and visibly upset. During her walk home, she frantically attempted to call her mother to no avail.

66. Upon arriving home, Ms. Doe immediately went to her room and closed her door. Ms. Doe was scared and embarrassed by what had transpired and began uncontrollably crying.

67. Later that evening, upon arriving home from work, Ms. Doe's mother excitedly sought out her daughter to inquire about the interview. Upon entering Ms. Doe's room, Ms. Doe's mother noticed her daughter had been crying and was clearly upset.

68. At all times material, Ms. Doe informed her mother of what occurred at which time they immediately contacted the police to file a police report.

69. On or around that same day, Defendants constructively discharged Plaintiff. Defendants made conditions so onerous, abusive, and intolerable for Plaintiff that no woman in Plaintiff's shoes would have been expected to continue working under such conditions and such that Plaintiff choice to resign was void of choice or free will.

70. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

71. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

72. Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

73. That as a result of Defendants' conduct and comments, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

74. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

75. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

76. The above are just some examples, of some of the discrimination to which Defendant subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

77. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

78. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

79. Title VII further provides that "it shall be an unlawful employment practice for any employer . . . controlling . . . training or retraining, including on-the-job training programs to discriminate against any individual because of [her] race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide . . . training." 42 U.S.C. § 2000e-2(d).

80. Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

81. Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e, *et seq.,* by discriminating against Plaintiff because of her sex and gender.

### <u>AS A SECOND CAUSE OF ACTION<br>FOR DISCRIMINATION UNDER TITLE VII</u>

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. <u>Harris v. Forklift Systems</u>, 510 U.S. 17, 21 (1993).

84. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742 (1998).

85. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. <u>Andrews v. city of Philadelphia</u>, 895 F.2d 1469, 1486 (3d Cir. 1990).

86. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." <u>Huston v. Procter & Gamble Paper Prods. Corp.</u>, 568 F.3d 100, 105 (3d Cir. 2009).

87. Here, Defendants' conduct (1) occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

88. First, the harassing conduct directly refers to Plaintiff's sex/gender. If Plaintiff had been a male she would not have been treated in the same manner.

89. The conduct was both severe and pervasive.

90. The conduct was emotionally damaging and humiliating.

91. The conduct unreasonably interfered with Plaintiff's work performance.

92. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

93. Second, as the store manager, Mr. Penn had the authority and control over the working environment, and he abused that authority to create a hostile work environment. A reasonable female subjected to Plaintiff's working environment would believe Mr. Penn's conduct was severe or pervasive enough to have altered the conditions of employment and render the working environment intimidating, hostile or abusive because Defendants'

conduct culminated in Plaintiff experiencing an *actual* adverse employment action (termination/constructive discharge).

94. As a result of the Defendant's violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

### AS A THIRD CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. $2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

97. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. $2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

### AS A FOURTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. The PHRA § 955 provides that  it shall be an unlawful discriminatory practice:  "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the

blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

100. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of because of her sex and gender.

101. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the PHRA § 955.

## FIFTH CAUSE OF ACTION
## DISCRIMINATION UNDER STATE LAW

102. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

103. The PHRA also prohibits hostile work environment harassment, which is harassing conduct in the workplace that would not have occurred but for one of the above-mentioned protected characteristics of the employee (e.g., sex/gender) that is severe or pervasive enough to make a reasonable person with that protected characteristic (e.g., a reasonable person of the involved sex/gender) believe the conditions of the workplace are altered and the working environment is hostile or abusive. Hoy v. Angelone, 691 A.2d 476, (Pa. Super. 1997).

104. The fifth and final element of a hostile work environment claim is respondeat superior liability. "Liability will exist where the employer knew or should have known of the harassment and failed to take prompt remedial action. Id at 606.

105. Furthermore, an "employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship." *Karibian v. Columbia University,* 14 F.3d 773, 780 (2nd Cir.1994).

106. Here, Defendants' conduct (1) occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

107. First, the harassing conduct directly refers to Plaintiff's sex/gender. If Plaintiff had been a male she would not have been treated in the same manner.

108. Second, as the store manager, Mr. Penn had the authority and control over the working environment, and he abused that authority to create a hostile work environment. A reasonable female subjected to Plaintiff's working environment would believe Mr. Penn's conduct was severe or pervasive enough to have altered the conditions of employment and render the working environment intimidating, hostile or abusive because Defendants' conduct culminated in Plaintiff experiencing an ***actual*** adverse employment action (termination/constructive discharge).

109. Since the hostile work environment resulted in Plaintiff's experiencing a "tangible employment action," which includes "discharge, demotion or undesirable reassignment," Defendants cannot raise an affirmative defense to her claims of employer vicarious liability based on delegation of authority. Burlington Industries v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998).

## AS A SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

111. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

112. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer/employee.

## AS A SEVENTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER STATE LAW

113. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

114. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: " For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

115. Defendants engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS AN EIGHTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

117. The Philadelphia Fair Practices Ordinance § 9-1103(1) provides that "It shall be an unlawful discriminatory practice: "It shall be an unlawful employment practice to deny or interfere with the employment opportunities of an individual based upon his or her race, ethnicity, color, sex (including pregnancy, childbirth, or a related medical condition), sexual orientation, gender identity, religion, national origin, ancestry, age, disability, marital status, familial status, genetic information, or domestic or sexual violence victim status, including, but not limited to, the following: (a) For any employer to refuse to hire, discharge, or otherwise discriminate against any individual, with respect to tenure, promotions, terms, conditions or privileges of employment or with respect to any matter directly or indirectly related to employment."

118. Defendants engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her sex and/or gender

119. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Philadelphia Fair Practices Ordinance Chapter 9-1100.

## AS AN NINTH CAUSE OF ACTION FOR RETALIATION UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

120. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

121. The PFPO also prohibits hostile work environment harassment, which is harassing conduct in the workplace that would not have occurred but for one of the above-mentioned protected characteristics of the employee (e.g., sex/gender) that is severe or pervasive enough to make a reasonable person with that protected characteristic (e.g., a reasonable person of the involved sex/gender) believe the conditions of the workplace are altered and the working environment is hostile or abusive. Hoy v. Angelone, 691 A.2d 476, (Pa. Super. 1997).

122. The fifth and final element of a hostile work environment claim is respondeat superior liability. "Liability will exist where the employer knew or should have known of the harassment and failed to take prompt remedial action. Id at 606.

123. Furthermore, an "employer is liable for the discriminatorily abusive work environment created by a supervisor if the supervisor uses his actual or apparent authority to further the harassment, or if he was otherwise aided in accomplishing the harassment by the existence of the agency relationship." *Karibian v. Columbia University,* 14 F.3d 773, 780 (2nd Cir.1994).

124. Here, Defendants' conduct (1) occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered and that the working environment was intimidating, hostile or abusive.

125. First, the harassing conduct directly refers to Plaintiff's sex/gender. If Plaintiff had been a male she would not have been treated in the same manner.

126. Second, as the store manager, Mr. Penn had the authority and control over the working environment, and he abused that authority to create a hostile work environment. A reasonable female subjected to Plaintiff's working environment would believe Mr. Penn's

conduct was severe or pervasive enough to have altered the conditions of employment and render the working environment intimidating, hostile or abusive because Defendants' conduct culminated in Plaintiff experiencing an *actual* adverse employment action (termination/constructive discharge).

127. Since the hostile work environment resulted in Plaintiff's experiencing a "tangible employment action," which includes "discharge, demotion or undesirable reassignment," Defendants cannot raise an affirmative defense to her claims of employer vicarious liability based on delegation of authority. Burlington Industries v. Ellerth, 524 U.S. 742, 765 (1998) and Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998).

## AS AN TENTH CAUSE OF ACTION FOR RETALIATION UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

128. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

129. The Philadelphia Fair Practices Ordinance § 9-1103(1)(g) provides that it shall be unlawful discriminatory practice: " For any person to harass, threaten, harm, damage, or otherwise penalize, retaliate or discriminate in any manner against any person because he, she or it has complied with the provisions of this Chapter, exercised his, her or its rights under this Chapter, enjoyed the benefits of this Chapter, or made a charge, testified or assisted in any manner in any investigation, proceeding or hearing hereunder."

130. Defendant Corporation and Defendant ZHAO engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(g) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer/employee.

## AS AN ELEVENTH CAUSE OF ACTION FOR AIDING & ABETTING UNDER THE PHILADELPHIA CITY ADMINISTRATIVE ORDINANCE

131. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

132. The Philadelphia Fair Practices Ordinance § 9-1103(1)(h) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, induce, compel or coerce the doing of any unlawful employment practice or to obstruct or prevent any person from complying with the provisions of this Section or any order issued hereunder or to attempt directly or indirectly to commit any act declared by this Section to be an unlawful employment practice."

133. Defendant Corporation and Defendant ZHAO engaged in an unlawful discriminatory practice in violation of Philadelphia Fair Practices Ordinance § 9-1103(1)(h) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A TWELFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (*Plead in the Alternative as Against all Defendants*)

134. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

135. Plaintiff brings claims against all Defendants for intentional infliction of emotional distress ("IIED") and hold each vicariously liable for the acts of the others.

136. To prove a claim of IIED, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe. Hooten v. Penna. College of Optometry, 601

F.Supp. 1155 (E.D.Pa.1984); <u>Hoy v. Angelone</u>, 691 A.2d 476, 482 (Pa.Super. 1997); Restatement (Second) of Torts § 46.

137. During Plaintiffs' employment, Defendants intentionally and recklessly harassed and inflicted emotional injury on Plaintiff by subjecting her to outrageous treatment beyond all bounds of decency.

138. Defendants intentionally caused severe emotional distress to the Plaintiff Doe by and through their deliberate indifference to the discrimination and sexual harassment.

139. Defendants verbally, mentally and physically abused Plaintiff and treated her in a demeaning and inferior manner, which no reasonable person could be expected to endure.

140. Defendants' discriminatory and intolerable treatment, including but not limited to Mr. Penn's senseless sexual harassment and display of sexually graphic images to Plaintiff Doe, a minor.

141. As a direct and proximate result of Defendants' intentional and indifferent conduct, the Plaintiff Doe suffered severe pain, emotional distress, and mental anguish as the result of being sexually harassed.

**AS A THIRTEENTH CAUSE OF ACTION**
**<u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>**
***(Plead in the Alternative as Against all Defendants)***

142. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

143. Defendants owed Plaintiff a duty of care to safeguard her mental and physical health and wellbeing; and Defendants' breach of this duty directly and proximately caused Plaintiff to suffer genuine and substantial emotional distress, which manifested itself in physical illness and serious psychological sequelae.

144. Defendants, negligently caused severe emotional distress to the Plaintiff Doe by and through their extremely negligent actions and breach of their duty of care, including but not limited to the senseless sexual harassment directed upon the PLAINTIFF which directly led to her physical and emotional injuries.

145. As a direct and proximate result of Defendants' extremely negligent, reckless, and indifferent conduct, the PLAINTIFF suffered severe pain, emotional distress, and mental anguish as the result of being sexually harassed.

146. Plaintiff's injuries were foreseeable because a reasonable person would have known that Defendants' actions would cause a reasonable person substantial emotional distress.

## AS AN FOURTEENTH CAUSE OF ACTION
## NEGLIGENT HIRING, TRAINING AND SUPERVISION
### *(Plead in the Alternative as Against all Defendants)*

147. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

148. Defendants owed Plaintiff DOE a duty of care to safeguard her mental and physical health and well-being.

149. Defendants had the duty to act and ensure the safety of Plaintiff DOE. Defendants were negligent in allowing Plaintiff DOE to be sexually attacked and harassed by their own employee/manager.

150. Defendants acted in contravention to their duty of care to Plaintiff DOE, negligently, carelessly and recklessly by failing to properly hire, train, supervise, control, direct and monitor their employees, security staff and agents in their duties and responsibilities.

151. Defendants knew or had reason to know of the particular unfitness, incompetence or dangerous attributes of their employee Mr. Penn.

152. Defendants knew, both during the hiring process and throughout Mr. Penn's employment, that he had an inappropriate or dangerous characteristics, attributes or tendencies that made him an unacceptable candidate for the position. Alternatively, a reasonable investigation would have disclosed his undesirable characteristics, attributes and/or tendencies.

153. As a result of the negligence of Defendants, Plaintiff Doe was exposed to a dangerous individual, who during the course of Plaintiff's employment, intentionally and recklessly harassed and inflicted emotional injury on her by subjecting her to outrageous treatment beyond all bounds of decency.

154. As a direct and proximate result of the acts and omissions of Defendants, the Plaintiff DOE was wrongfully and unlawfully attacked, harassed, at Defendants City Line Location by Defendants employee, Mr. Penn, in and/or near the presence of agents and employees of Defendants.

155. Defendants' breach of this duty directly and proximately caused Plaintiff to sustain severe emotional distress, resulting in physical illness and serious psychological sequelae, and damages, including punitive damages, to be determined at trial.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  Miami, Florida
        December 16, 2019

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

Caroline H. Miller, Esq.
Caroline@dereksmithlaw.com
701 Brickell Avenue, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741