**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | |
| | : | No. 2:19-cv-05925-ER |
| MCDONALD'S USA, LLC, and | : | |
| TANWAY ENTERPRISES, L.P., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT TANWAY ENTERPRISES, L.P.'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.    PRELIMINARY STATEMENT**

Plaintiff Tamiah Marcellus claims that she was sexually harassed by Darnell Penn, a former shift manager for Defendant Tanway Enterprises, L.P. ("Tanway"), while he interviewed her for a role as a part-time crew member in one of Tanway's restaurants.  Based on this incident, Ms. Marcellus makes claims of hostile work environment and *quid pro quo* sexual harassment in violation of Title VII, the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"), and a tort claim of negligent hiring, training, and supervision.  Plaintiff's hostile work environment claim fails for two fundamental reasons: 1) Plaintiff was never a Tanway employee and thus could not have suffered a hostile work environment; and 2) Plaintiff cannot establish *respondeat superior* liability, as this Court previously held, because Mr. Penn's actions were not taken within the scope of his employment. Plaintiff's *quid pro quo* sexual harassment claim is similarly flawed as Plaintiff herself admits there was no *quid pro quo* – she was offered the job that she was seeking, without strings attached.  Finally, Plaintiff is unable to support her claim of negligent training and supervision as there are no facts in the record suggesting that Tanway either knew or should have known that Mr. Penn had a propensity for sexual harassment.  In fact, all of the record evidence shows that

Tanway behaved reasonably as a matter of law, including with respect to the training and supervision of Mr. Penn.  In short, each of Plaintiff's claims fail for fundamental reasons and Tanway is entitled to summary judgment on all counts.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Tanway is owned and operated by Tanya Holliday.  Ex. A (Holliday dep.) at 19:3-4. Tanway currently owns twelve franchise restaurants in the Philadelphia area, including the store located at 7500 City Avenue in Philadelphia, where Plaintiff sought employment.  Ex. A (Holliday dep.) at 20:3-11.

Due to the nature of the fast-food restaurant business, Tanway is continually looking to bring on new crew members.  Ex. B (Hill dep.) at 66:5-19.  For crew members, Tanway's hiring process consists of at least one interview conducted by a store manager.  Ex. B (Hill dep.) at 66:20-67:8.  Although shift managers are permitted to conduct interviews, they do not possess authority to making hiring decisions.  Ex. B (Hill dep.) at 67:13-21; Ex. C (Williams dep.) at 67:20-68:2, 107:8-11; Ex. A (Holliday dep.) at 54:1-55:10.

After the interview process is complete and a store manager has offered a candidate a role, orientation is scheduled.  Ex. A (Holliday dep.) at 47:13-48:14.  Orientation is considered the first day of employment.  Ex. B (Hill dep.) at 68:13-21, 69:10-21; Ex. A (Holliday dep.) at 49:1-9, 52:14-53:9.  At orientation, new employees are given the employee handbook and other relevant Tanway policies, and required to provide Tanway the appropriate identification for employment eligibility verification purposes and complete payroll and hiring-related paperwork. Ex. B (Hill dep.) at 70:5-17; Ex. A (Holliday dep.) at 47:13-49:9; 52:14-19

Tanway has a zero tolerance policy for discrimination and sexual harassment in the workplace.  Ex. A (Holliday dep.) at 71:4-74:23; Ex. D (Zero Tolerance Policy Regarding Discrimination and Sexual Harassment).  Tanway has a fulsome investigation process that is

triggered upon any allegations of inappropriate conduct, such as sexual harassment. Tanway's investigation process includes removing the employee accused of misconduct from the workplace, interviewing the alleged victim and any appropriate witnesses, and reviewing any relevant security footage. Ex. C (Williams dep.) at 60:14-61:20; Ex. B (Hill dep.) at 44:5-45:8; Ex. A (Holliday dep.) at 81:24-83:12.

***Mr. Penn's hiring at Tanway***

Dawn Williams, Tanway's Director of Operations, and another supervisor interviewed Darnell Penn for the shift manager role on two occasions and required him to perform an on-the-job evaluation. Ex. C (Williams dep.) at 63:1-12. Before offering Mr. Penn the job, Ms. Williams also called and spoke with two of Mr. Penn's references, including his then-current employer. Ex. C (Williams dep.) at 63:17-64:9. Both references provided extremely positive feedback regarding Mr. Penn. *Id.* Mr. Penn was formally offered the role of shift manager on January 23, 2018 and he began working for Tanway on January 24, 2018. Ex. C (Williams dep.) at 66:9-14. Mr. Penn received and signed off on Tanway's sexual harassment policy. Ex. E (Crew Awareness Orientation Form).

As a shift manager, Mr. Penn's primary job duty was to ensure the effective operation of the restaurant during his scheduled shift. Ex. C (Williams dep.) at 66:18-67:16. Mr. Penn did not have authority to hire or fire crew members. Ex. C (Williams dep.) at 67:20-68:2. It was within Mr. Penn's role as a shift manager to conduct hiring interviews and make recommendations to the store manager. *Id.*; *Id.* at 107:8-11; Ex. B (Hill dep.) at 67:13-21.

There are no allegations of wrongdoing or misconduct by Mr. Penn of any kind prior to those raised by Plaintiff in relation to her interview with Tanway on April 12, 2018. Ex. B (Hill dep.) at 56:13-58:11, 63:8-11; Ex. A (Holliday dep.) at 102:5-10.

*Plaintiff's interview at Tanway*

On April 12, 2018, Plaintiff was interviewed by Mr. Penn for a role as a crew member. Second Amended Complaint (Doc. 34) at ¶ 36.  Mr. Penn interviewed Plaintiff at a table in the restaurant, within view of anyone passing by or using the drink station.  Ex. F (T. Marcellus dep.) at 42:14-43:5.  Mr. Penn began the interview by asking Plaintiff typical interview questions and then he offered her the job.  Ex. F (T. Marcellus dep.) at 36:8-19, 44:15-25, 115:9-13.  Mr. Penn advised Plaintiff that she should return to the restaurant the following Sunday to provide a copy of her birth certificate and photo identification and then at that point she could begin employee training.  Ex. F (T. Marcellus dep.) at 40:3-9, 44:15-45:13, 50:12-21.

After offering Plaintiff the job, Mr. Penn asked to view Plaintiff's phone.  Ex. F (T. Marcellus dep.) at 114:14-115:15.  After Mr. Penn reviewed Plaintiff's phone, Plaintiff alleges that Mr. Penn showed her a number of photos on his phone, including several of nude women. Ex. F (T. Marcellus dep.) at 39:5-17.  Plaintiff also alleges that Mr. Penn asked her to undo a second button on her shirt, which she declined to do, and that he asked her questions about her boyfriend.  Ex. F (T. Marcellus dep.) at 45:18-47:3, 117:6-16.  Mr. Penn never suggested that Plaintiff's offer of employment would be rescinded or that the job offer was contingent upon her cooperation with his conduct.  Ex. F (T. Marcellus dep.) at 116:21-117:5.

After the interview, Plaintiff was no longer interested in working for Tanway.  Ex. F (T. Marcellus dep.) at 61:16-25.  To be clear, Plaintiff never went through Tanway's new employee orientation, never filled out any of Tanway's hiring paperwork, never performed work for Tanway, never received a paycheck, and was never provided with Tanway's employee handbook.  Ex. F (T. Marcellus dep.) at 119:22-120:20.

*Mr. Penn's termination*

Mr. Penn's employment with Tanway was terminated for leaving his shift early on the date of the alleged incident with Plaintiff and for failing to appear for his next few scheduled shifts. Ex. G (Disciplinary Action Form); Ex. B (Hill dep.) at 73:7-17, 75:8-19.

Plaintiff contacted the local police about Mr. Penn's conduct the same day of the interview. Ex. F (T. Marcellus dep.) at 54:2-23. Plaintiff did not report the alleged harassment to anyone at Tanway. Ex. F (T. Marcellus dep.) at 58:23-59:18. In fact, Tanway did not learn of Plaintiff's allegations until twelve days after the alleged incident when a police officer contacted Tanway as part of the police investigation. Ex. A (Holliday dep.) at 102:12-24; Ex. C (Williams dep.) at 82:24-84:9. Upon learning of the allegations, Tanway investigated in accord with its normal process. Ex. C (Williams dep.) at 90:16-98:8. However, because the allegations were not brought to their attention until nearly two weeks later when Mr. Penn's employment had already been terminated, Tanway was not able to question him about the allegations. Ex. A (Holliday dep.) at 104:15-23, 112:9-22.

Plaintiff's Second Amended Complaint, filed May 28, 2020, is the operative pleading, which Tanway now seeks to have dismissed in its entirety. (Doc. 34).

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

If the moving party meets this initial burden, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would

show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). See also *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (a party opposing summary judgment may not rely upon bare assertions, conclusory allegations, or mere suspicions). To successfully oppose entry of summary judgment, the non-moving party must designate specific factual averments through the use of affidavits or other permissible evidentiary material that demonstrate a triable factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 247-50. Such evidence must be sufficient to support a jury's factual determination in favor of the non-moving party. Evidence that merely raises some metaphysical doubt regarding the validity of a material fact is insufficient to satisfy the non-moving party's burden. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Further, "[i]t is well settled that only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F.Supp. 474, 482 (D.N.J. 1995). See also Fed. R. Civ. P. 56(c)(2).

## IV.    ARGUMENT

### A.    Plaintiff fails to state a prima facie case of hostile work environment under Title VII, the PHRA, or the PFPO.

The elements of a prima facie case of hostile work environment sexual harassment under Title VII, the PHRA, and the PFPO are: "(1) the employee suffered intentional discrimination [in a work environment] because of [his or her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability." *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir.

1997) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)).[1]

Here, Plaintiff cannot establish that she suffered discrimination in a work environment because she was not an employee at the time of the alleged harassment, which occurred exclusively during the job interview.  Courts in this District have considered this exact situation and held that harassment during an interview, as Plaintiff alleges here, cannot serve as the basis for a hostile work environment claim.  *Moore v. Penn. Dept. Military & Veterans Affairs*, 216 F. Supp. 2d 446, 449 (E.D. Pa. 2002) (dismissing a hostile work environment claim where the alleged harassment occurred during plaintiff's job interview on the basis that "plaintiff was not at the time of the alleged assault an employee and thus could not have been exposed to a hostile workplace"); *see also Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 664 (E.D. Pa. 2019) (applying the same principle to a claim of a hostile educational environment and dismissing plaintiff's claim where the alleged harassment occurred during an admissions interview).

Put another way: hostile work environment claims may be brought against a plaintiff's employer only. *Suri v. Foxx*, 69 F. Supp. 3d 467, 476 (D.N.J. 2014); *Wassman v. City of Dana Point*, 2018 WL 5906346 at *6 (C.D. Cal. July 2, 2018) ("[A] hostile work environment claim does not lie where the plaintiff is an applicant but not an employee."); *Sanders v. City and County of Honolulu*, 2021 WL 3376821 at *2 (D. Haw. Aug. 3, 2021) (dismissing job applicant's hostile work environment claim on the grounds that "a non-employee 'will not, as a matter of law, be able to show that any alleged harassment altered the conditions of her *employment*.'"); *see also* 42 U.S.C. § 2000e(f) (defining "employee" as "an individual employed by an

---

[1]    Claims brought under the PFPO and the PHRA have been interpreted in a similar fashion to claims brought under Title VII.  *See e.g. Ahern v. Eresearch Technology, Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016); *Dici v. Commw. Pa.*, 91 F.3d 542, 552 (3d Cir.1996) (the PHRA is applied in a similar manner as Title VII); *see also Joseph v. Cont'l Airlines, Inc.*, 126 F.Supp.2d 373, 376 n. 3 (E.D.Pa.2000) (analysis of a claim under Title VII applies in equal force to the PFPO).

employer").  Cases brought by interns and volunteers are useful here insofar as they make clear that whether someone is an "employee" hinges on compensation.  *See Payne v. Prevention Point Philadelphia, Inc.,* 2021 WL 2414606 (E.D. Pa. 2012) ("[R]emuneration is a threshold requirement to qualify as an employee under Title VII."); *Cimino v. Borough of Dunmore*, 2005 WL 3488419 (M.D. Pa. 2005) (dismissing plaintiff's Title VII claims where she received no direct or indirect compensation from the defendant).

Plaintiff's hostile work environment claim fails for the simple reason that she was never a Tanway employee.  Plaintiff admits that she never filled out any Tanway hiring paperwork, she never appeared for new employee orientation, she never performed any work, and she never received any compensation.  Ex. F (T. Marcellus dep) at 120:9-20. Tanya Holliday, Tanway's owner/operator, testified at length about Tanway's hiring process and that employment starts when the applicant shows up for orientation, completes their hiring paperwork, and is entered into Tanway's payroll system. *See, e.g.*: Ex. A (Holliday dep.) at 47:13-49:9; 52:14-19.  This process makes practical sense given Tanway's business and work force, where offers are frequently extended to candidates who never show up for orientation.  *Id.* at 49:1-9.

In addition, Plaintiff cannot establish a prima facie case of hostile work environment as she cannot establish *respondeat superior* liability.  Mr. Penn's actions were plainly not within the scope of his employment and there is no record evidence suggesting that he had authority, apparent or otherwise, to engage in sexually harassing conduct.  This issue was argued in Tanway's briefing in support its Motion to Dismiss the Second Amended Complaint. *See* Doc. 37 (Tanway's Motion to Dismiss Second Amended Complaint) at 5-7. That argument is incorporated by reference here.

This Court found in Tanway's favor on this issue when it held that:

> Doe fails to state an IIED claim against Tanway because she cannot plausibly allege that Penn's conduct occurred within the scope of his employment. While conducting interviews may well have been part of Penn's job, the Second Amended Complaint fails to plausibly allege that the particular conduct at issue—i.e., showing Doe sexually graphic photographs on his cellphone—is conduct that Penn was "employed to perform" or that was "actuated, at least in part, by a purpose to serve" Tanway. See id.; see also Bissett v. Verizon Wireless, 401 F. Supp. 3d 487, 495 (M.D. Pa. 2019) ("[T]here is no conceivable explanation as to why the conduct giving rise to this case would serve [the defendant's] business."). Because Doe fails to plausibly allege that Penn's conduct occurred within the scope of his employment, she cannot hold Tanway vicariously liable.

Doc. 47 (Opinion Granting Motion to Dismiss) at 5-6.

This reasoning is all the more compelling now. The case law of this Circuit is quite clear that there is no hostile work environment liability without *respondeat superior* liability. *See, e.g., Bonenberger*, 132 F.3d at 25.  Plaintiff has not adduced any evidence in discovery to support a theory that Mr. Penn was acting within the scope of his employment or that he had authority to engage in the alleged misconduct.  To be clear, Tanway has a zero tolerance policy for any kind of harassment or discrimination, further evidencing that Mr. Penn's alleged actions were well-outside of the scope of his employment.  Ex. D; *see, e.g., Sabo v. Lifequest, Inc.*, 1996 WL 583169 at * (E.D. Pa. Oct. 8, 1996) (rejecting an apparent authority theory of *respondeat superior* where the plaintiff failed to adduce any evidence that the alleged harassment was company policy).  For these reasons, Plaintiff cannot establish a prima facie case of hostile work environment and summary judgment on that claim is appropriate.

> **B.**      **Plaintiff fails to satisfy the elements for a *quid pro quo* claim of sexual harassment under Title VII, the PHRA, or the PFPO.**

The elements of a claim for *quid pro quo* sexual harassment require that the offer of employment is either implicitly or explicitly conditioned on submission to the advances.

*Bonenberger*, 132 F.3d at 28 (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1296 (3d Cir. 1997)).  A *quid pro quo* harassment claim requires "a direct conditioning of job benefits upon an employee's submitting to sexual blackmail, or the consideration of sexual criteria in work evaluations." *Lee v. Gecewicz*, 1999 WL 320918 (E.D. Pa. 1999).  "Liability under Title VII for *quid pro quo* sexual harassment exists only if 'the consequences attached to an employee's response to the sexual advances [are] sufficiently severe to alter the employee's compensation, terms, conditions, or privileges of employment.'" *Emmanuella Cherisme v. AIDS Care Group*, 2016 WL 3997237 at *3 (E.D. Pa. July 26, 2016) (quoting *Bonenberger*, 132 F.3d at 28).

Plaintiff was clear at her deposition that she was offered the job and *then* Mr. Penn engaged in the inappropriate conduct. Ex. F (T. Marcellus dep.) at 115:9-13. Plaintiff admits that there was no suggestion from Mr. Penn that he would rescind the job offer if Plaintiff did not go along with looking at his phone. *Id.* at 116:21-117:5. Plaintiff also admitted she told Mr. Penn she was uncomfortable at one point and he never indicated that he was going to rescind the job offer or that her submission to his advances was a contingency upon the job offer. *Id.* ("Q: Did Mr. Penn ever suggest that he would take back the job offer if you didn't look at the photos on his phone?  A: No.  He never said anything about taking the job offer back.").  Based on Plaintiff's own testimony, there was no direct conditioning of the job offer upon Plaintiff's submission to Mr. Penn's advances, as is required to make out a claim under a *quid pro quo* theory. *See, e.g., Bonenberger*, 132 F.3d at 28.  Because there is no such causation between the harassment and any adverse employment action, Plaintiff's claim for *quid pro quo* sexual harassment should be dismissed.

### C.    Plaintiff fails to state a claim for negligent training and supervision.

A plaintiff seeking to recover on a negligent supervision and/or negligent training theory must show that his loss resulted from: "(1) a failure to exercise ordinary care to prevent an

intentional harm by an employee acting outside the scope of his employment; (2) that is committed on the employer's premises; (3) when the employer knows or has reason to know of the necessity and ability to control the employee." *Belmont v. MB Inv. Partners*, 708 F.3d 470, 487–88 (3rd Cir. 2013) (citing *Dempsey v. Walso Bureau, Inc*., 431 Pa. 562, 565, 246 A.2d 418, 420 (1968)). Under this standard, the employee's prior behavior must put the employer on notice that it must control the employee.  *See Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 108 (Pa.Super.Ct.1998) (noting that an employee's prior behavior must indicate a propensity to cause the harm in question and that the employer must know or have reason to know about such prior behavior).  "An employer can only be liable for negligent supervision if it knew, or should have known, that 'the employee ha[d] dangerous propensities that might cause harm to a third party.'" *Court. v. Loews Philadelphia Hotel, Inc.,* No. CV 16-4848, 2017 WL 569522, at *4 (E.D. Pa. Feb. 13, 2017).

There are no facts in the record to support a claim that Tanway knew or should have known that Mr. Penn had a propensity for sexual harassment.  To the contrary, Tanway did its due diligence before hiring Mr. Penn by interviewing him twice, requiring him to perform an on-the-job evaluation, and checking his references.  Ex. C (Williams dep.) at 63:1-12.  Ms. Williams personally spoke to two references, including a manager at Chick-Fil-A where Mr. Penn was working at the time, and both references spoke very highly of Mr. Penn.  Ex. C (Williams dep.) at 63:17-64:9.  After he began his employment at Tanway, there were no complaints about Mr. Penn prior to the issue with Plaintiff.  Ex. B (Hill dep.) at 56:13-58:11, 63:8-11; Ex. A (Holliday dep.) at 102:5-10.

There is simply *no* record evidence to indicate that Tanway was on notice of *any* risk posed by employing Mr. Penn, let alone the sort of serious risk required to support a claim of

negligent training and supervision liability. The law does not require Tanway to be omniscient or clairvoyant, only to exercise reasonable care, which it did when it interviewed Mr. Penn, checked his references, and trained him on appropriate workplace conduct.  Ex. C (Williams dep.) at 63:1-64:9; Ex D.  To impute the alleged actions of Mr. Penn to Tanway would create a strict liability standard which holds an employer responsible for all intentional torts performed by all of its employees during the course of their workday, no matter how outrageous or unrelated to the employer's business interests.  This impossibly-high standard is without basis in the relevant statutes and binding precedent, and would cripple employers in ceaseless litigation.  For that reason, summary judgment should be granted on this count.

## V.      CONCLUSION

Plaintiff's claims against Tanway are not supported by either fact or law and, accordingly, Tanway is entitled to summary judgment on all counts.

RESPECTFULLY SUBMITTED,

*/s/ Danielle M. Goebel*

Dated: December 7, 2021

DILWORTH PAXSON LLP
Danielle M. Goebel, Esquire
Atty. ID No. 313622
1500 Market Street, Suite 3500E
Philadelphia, PA 19102-2101
P: (215) 575-7000 / F: (215) 575-7200
dgoebel@dilworthlaw.com
*Attorney for Defendants*

12